IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Lisa L., | ) |
|        Plaintiff, | ) ) ) ) Case No.: 20-cv-50395 |
| v. | ) ) Magistrate Judge Margaret J. Schneider |
| Martin O'Malley, Commissioner of Social Security,[1] | ) ) ) |
|        Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

      Plaintiff, Lisa L., seeks review of the final decision of the Commissioner of the Social Security Administration denying her disability benefits. The parties have filed cross motions for summary judgment [17], [24]. For the reasons set forth below, Plaintiff's motion for summary judgment [17] is denied and the Commissioner's motion for summary judgment [24], is granted. The final decision of the Commissioner denying benefits is affirmed.

**BACKGROUND**

  **A. Procedural History**

      On August 21, 2017, Lisa L. ("Plaintiff") filed for disability insurance benefits. R. 74. The Social Security Administration ("Commissioner") initially denied her application on November 15, 2017, and upon reconsideration on April 13, 2018. *Id*. Plaintiff filed a written request for a hearing on June 12, 2018. *Id*. On July 10, 2019, a hearing was held by Administrative Law Judge ("ALJ") Patricia Kendall where Plaintiff appeared virtually and testified. *Id*. Plaintiff was represented by counsel. *Id*. Brian L. Harmon, an impartial vocational expert ("VE"), and Allen W. Heinemann, Ph.D., an impartial medical expert, also appeared and testified. *Id*.

      On January 06, 2020, the ALJ issued her written opinion denying Plaintiff's claims for disability, disability insurance benefits, and supplemental security income. R. 74-88. Plaintiff appealed the decision to the Appeals Council, and the Appeals Council denied Plaintiff's request for review. R. 3-9. Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *See* 42 U.S.C. § 405(g); *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). Now before the Court are Plaintiff's motion for summary judgment [17], the Commissioner's cross-motion for summary judgment and response to Plaintiff's motion for summary judgment [24], and Plaintiff's reply brief [25].

---

[1] Martin O'Malley has been substituted for Andrew Saul. Fed. R. Civ. P. 25(d).

### B. The ALJ's Decision

In her ruling, the ALJ applied the statutorily required five-step analysis to determine whether Plaintiff was disabled under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ found that Plaintiff had not been engaging in substantial gainful activity since the amended alleged onset date of August 21, 2017. R. 77. At step two, the ALJ found that Plaintiff had the following severe impairments: affective disorder/bipolar disorder, anxiety disorder with panic, and obsessive-compulsive disorder. *Id*. The ALJ found that these impairments significantly limited Plaintiff's ability to perform basic work activities. *Id*. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1, finding that Plaintiff's mental impairments did not satisfy the criteria in either Paragraph B or Paragraph C. R. 77-78.

Before step four, the ALJ found that Plaintiff had a residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following non-exertional limitations: work is limited to simple, routine, and repetitive tasks in an environment free of fast paced production requirements with only end of day quotas and involving only simple, work related decisions; few, if any workplace changes; rare, if any, interaction with the public and only of a brief and superficial nature; occasional interaction with co-workers but no tandem tasks; and occasional interaction with supervisors. R. 78. At step four, the ALJ found that Plaintiff has no past relevant work. R. 87. Finally, at step five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including cleaner/housekeeper (DOT# 323.687-014), inspector (DOT# 739.687-102), and sorter (DOT# 222.687-014). R. 88. Therefore, the ALJ concluded that Plaintiff was not disabled under the Social Security Act at any time from August 21, 2017, through the date of decision, January 06, 2020. *Id*.

### STANDARD OF REVIEW

The reviewing court evaluates the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (internal citations omitted). Substantial evidence is "more than a mere scintilla." *Wright v. Kijakazi*, No. 20-2715, 2021 WL 3832347, at *5 (7th Cir. 2021). "Whatever the meaning of 'substantial' in other contexts, the Supreme Court has emphasized, 'the threshold for such evidentiary sufficiency is not high.'" *Id*. (quoting *Biestek v. Berryhill*, 139 S.Ct. 1148, 1153 (2019)). As such, the reviewing court takes a limited role and cannot displace the decision by reconsidering facts or evidence or by making independent credibility determinations, *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008), and "confines its review to the reasons offered by the ALJ." *Green v. Astrue*, No. 11 CV 8907, 2013 WL 709642, at *7 (N.D. Ill. Feb. 27, 2013).

The court will only reverse the decision of the ALJ "if the record compels a contrary result." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (citations and quotations omitted). The court is obligated to "review the entire record, but [the court does] not replace the ALJ's judgment

with [its] own by reconsidering facts, re-weighing or resolving conflicts in the evidence, or deciding questions of credibility. [The court's] review is limited also to the ALJ's rationales; [the court does] not uphold an ALJ's decision by giving it different ground to stand upon." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020). Additionally, an ALJ "need not specifically address every piece of evidence, but must provide a logical bridge between the evidence and his conclusions." *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023) (citations and quotations omitted). *See also Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015).

## DISCUSSION

Plaintiff contends that the ALJ's decision erred in the evaluation of the medical opinion evidence, failed to evaluate the RFC in accordance with SSR 96-8P, and failed to evaluate "Plaintiff's [a]llegations" in accordance with SSR 16-3P. [17], p. 1-15. Each argument will be taken in turn.

### A. ALJ's Treatment of Opinion Evidence

Plaintiff contends that the ALJ erred in her assessment of the medical opinion evidence provided by Dr. Lopez and Dr. Heinemann. [17], p. 2-10. The ALJ found the opinion of Dr. Lopez, Plaintiff's treating physician, unpersuasive and found the opinion of Dr. Heinemann, the medical expert who testified at Plaintiff's hearing, somewhat persuasive "[b]ut unpersuasive as to the need for rest breaks every hour or couple hours." R. 85-57. Consequently, Plaintiff argues that the ALJ erred as to Dr. Lopez's evaluation because she "[d]id not properly assess the supportability and consistency of the opinion [of Dr. Lopez]," and erred as to Dr. Heinemann's evaluation by impermissibly substituting her lay opinion and failing to explain her reasoning as to the split persuasiveness of the opinion. [17], p. 2; 8-10. As explained below, the Court finds that the ALJ sufficiently supported and articulated her assessment of the medical opinions and therefore did not err.

Plaintiff filed her case after March 17, 2017, and as a result the ALJ "[w]ill not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)..." *Patrice W. v. Kijakazi*, No. 20 C 02847, 2022 WL 2463557, at *3 (N.D. Ill. July 6, 2022) (citing 20 C.F.R. § 404.1520c(a)) (internal quotations omitted). Instead, the ALJ is advised to consider a variety of factors in evaluating medical opinions and must "[e]xplain how she considered the supportability and consistency factors" in particular. *See* 20 C.F.R. § 404.1520c(b)(2); *Bakke v. Kijakazi*, 62 F.4th 1061, 1067-68 (7th Cir. 2023) (affirming that under § 404.1520c(b)(2), an ALJ must consider supportability and consistency of medical opinions). In considering the supportability and consistency of a medical opinion, "[a]n ALJ need only minimally articulate[ ] her reasoning for the persuasiveness of the medical opinion." *Desotelle v. Kijakazi*, No. 22-1602, 2023 WL 4146246, at *2 (7th Cir. June 23, 2023) (quoting *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008)) (internal quotations omitted). The ALJ here minimally articulated her consideration of the supportability and consistency factors when evaluating Dr. Lopez's opinion and thus did not err in evaluating the opinion.

Dr. Lopez opined in the disability questionnaire that Plaintiff was unable to sustain any work. R. 425. In evaluating this opinion, the ALJ explicitly considered its supportability and consistency, ultimately finding the opinion unpersuasive. R. 85-86. The ALJ found that Dr.

3

Lopez's recommendations were unsupported and inconsistent because "[t]he longitudinal evidence does not support the severity of symptoms [and] impaired functioning" expressed in Dr. Lopez's disability questionnaire and because "[t]he indicated limitations in the questionnaire are largely unsupported by the GAF ratings ranging between 60 and 70 (moderate to mild symptoms) and never less than 50-55 (serious to moderate symptoms)." R. 85.

After reviewing Dr. Lopez's treatment notes earlier in the RFC, the ALJ explained that Dr. Lopez's "[o]wn treatment notes indicate that the claimant's impairments improved steadily[2] over time." R. 85; *see also* R. 81-84 (citing R. 431, 445, 453, 458, 464, 473, 484, 505, 529, 767, 771, 759). Plaintiff argues that the ALJ mischaracterized Dr. Lopez's notes, asserting that the notes do not demonstrate improvement and are not inconsistent with Dr. Lopez's opinion. [17], p. 3, 8. Yet, in support of this contention, Plaintiff cites primarily to a suite of treatment notes that were taken when Plaintiff was off her medication or seeking a change in her medication, time-periods during which Plaintiff herself admits that "[w]hen she has not been properly medicated, [she] will get depressed and angry real fast." R. 431; *see also* [17], p. 4 (citing R. 392, 654, 661, 666, 445, 453, 458, 464, 529, 671, 445, 529, 663, 675) *and* [17], p. 5 (citing 654, 661, 663, 666, 671, 675), [17], p. 8-9 (citing 445, 453, 464, 473, 649, 654, 661, 666, 458, 671, 663, 675, 765).

The ALJ, in turn, included in her analysis consideration of the visits cited by Plaintiff to contest her improvement, as well as the numerous visits where Plaintiff reported consistent improvement with medication. R. 81-84; *see also* R. 647 ("[M]edications are quite effective for her in terms of keeping her mood even and keeping her functioning well"), R. 767 (reporting that the medication restarted at a prior visit "[r]eally improve[d] her mood and reduce[d] any type of OCD or compulsive symptoms"), R. 431 ("[m]ood wise [*sic*], 'I am even now. I am good and I have been for quite a while' with her current medication regimen"), R. 453 (Plaintiff reporting "little bit more mood stability overall" with increased medication), R. 458 (Plaintiff reporting that she likes "the lithium for mood stability"), R. 529 (Plaintiff reporting an interest in going back on her medications after taking some time off them because she believed they helped with her thoughts and mood), R. 771 (Plaintiff reporting that "her mood is good and that her psychiatric medications continue to remain effective… in addition to her mood she feels her OCD symptoms are under control"). Given that Dr. Lopez's questionnaire provided no further explanation of his conclusion that Plaintiff could not sustain employment beyond the checked boxes of the form, the ALJ clearly minimally articulated her reasoning as to the persuasiveness of Dr. Lopez's opinion by reviewing the full range of Dr. Lopez's detailed treatment notes to determine the supportability

---

[2] In support of her contention that Dr. Lopez's notes demonstrate steady improvement in contrast to his questionnaire's conclusion that Plaintiff's impairments precluded work, the ALJ pointed out that "[t]he claimant has never been hospitalized for her mental impairments." R. 85. Plaintiff argues that the ALJ erred in considering the lack of hospitalization. [17], p. 7. As the Court finds that the rest of the ALJ's reasoning for the weight of Dr. Lopez's opinion was minimally articulated, the Court need not consider whether the ALJ erred in her consideration of Plaintiff's hospitalization record. *See Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009) ("Not all of the ALJ's reasons must be valid as long as *enough* of them are…"); *see also Elizabeth A. D. v. Saul*, No. 19 C 6024, 2021 WL 148831, at *13 (N.D. Ill. Jan. 15, 2021) ("To the extent it was unreasonable for the ALJ to discount [Plaintiff's] subjective reports of her symptoms… based on the lack of psychiatric hospitalization, it does not render the ALJ's… assessment patently wrong [given the other evidence at issue].").

and consistency of his opinion. *See Winkelman v. Saul*, 835 F. App'x 889, 892 (7th Cir. 2021) ("Check-box forms, unexplained, are generally weak evidence."); *Gwendolyn P. v. Kijakazi*, No. 20 C 3339, 2021 WL 5204858, at *7 (N.D. Ill. Nov. 9, 2021) ("A [c]heck-box form[ ], unexplained, [is] generally weak evidence, taking on greater significance only when it is supported by medical records.") (internal quotations and citations omitted).

Moreover, the ALJ appropriately considered the GAF scores in determining the weight of Dr. Lopez's opinion. Plaintiff argues that the "ALJ did not construct a logical bridge from the evidence to her finding that GAF scores were persuasive." [17], p. 6. The ALJ did, in fact, construct a logical bridge by explaining that "[w]hile normally GAF ratings are not very persuasive… due to them being a subjective snapshot of one provider at one point in time, here the records contain GAF ratings from one provider only," thus rendering them persuasive to the ALJ because the concerns over GAF subjectivity from provider to provider were not present. R. 80-81. Here, the ALJ explained that the mild, moderate, and occasionally serious (one instance) GAF scores assigned by Dr. Lopez throughout his treatment notes did not support his disability questionnaire's contention that Plaintiff had no capacity to work at all. R. 85; R. 351, 445, 453 (reporting GAFs of 55-60); R. 435 (reporting a GAF of 50-55). Accordingly, the ALJ minimally articulated her reasoning that the GAF scores did not support Dr. Lopez's opinion, and in fact contradicted it, rendering it unpersuasive. *See also Schlattman v. Berryhill*, No. 16 C 908, 2017 WL 1316262, at *9 (N.D. Ill. Apr. 10, 2017) (approving the ALJ's evaluation of GAF scores as indicating inconsistency where a physician found that Plaintiff's abilities were often "poor to none" while also assigning GAF scores of 61-70 and 51-60, which "opined that Plaintiff's illness would impose no more than mild… [or] moderate restrictions").

Similarly, the ALJ appropriately considered the import of Dr. Heinemann's opinion. The ALJ explained that the portion of Dr. Heinemann's opinion regarding Plaintiff's need for rest breaks was unpersuasive because it was based on a misunderstanding of the therapy records[3] in Exhibit 8F, and because Dr. Heinemann did not review the full set of therapy records. R. 86-87. At the hearing, the ALJ noted that several months of records were missing, and asked Dr. Heinemann whether that would "[a]ffect his ability to provide testimony in this case," to which Dr. Heinemann responded that he could provide testimony as to Plaintiff's "[f]unctioning through December, of 2018." R. 50. Dr. Heinemann proceeded to testify at the hearing, and he explained that his opinion as to Plaintiff's need for rest breaks was based on the "therapist notes" in Exhibit 8F. R. 54.

The ALJ explained that because Dr. Heinemann did not have the chance to review the records in Exhibit 12F (R. 753-77), which demonstrated "steady improvement in the claimant's

---

[3] Plaintiff presents a limited argument that, in finding Dr. Heinemann's opinion unpersuasive based in part on his misunderstanding of the records he reviewed in Exhibit 8F, the ALJ decided that the mental status examinations reviewed by Dr. Heinemann were "invalid" and thus "impermissibly substitute[d] her lay opinion" [17], p. 9. The ALJ never characterized the therapy records in 8F as "invalid." Instead, she merely explained that Dr. Heinemann misunderstood the therapy notes' as capturing reports of Plaintiff's distinct symptoms at *each* visit, when in actuality the symptoms noted were essentially copied and pasted from the 08/22/2018 visit as part of an "initial intake evaluation that took several months to complete." R. 86; *compare* R. 477-81 *with* R. 488-92, 495-500, 509-515, 518-525. The ALJ therefore did not "impermissibly substitute" her lay opinion; she simply explained the misunderstanding of the 8F therapy records underpinning Dr. Heinemann's opinion as to the need for breaks.

symptoms and mental functioning," his opinion was not persuasive as to the need for rest breaks. R. 86. Furthermore, the ALJ explained that Dr. Heinemann misunderstood the records he did review in 8F (R. 426-531), as the records were actually the "initial intake evaluation that took several months to complete" and as such featured "mental status examinations [that] were carried through those notes." R. 86. In other words, Dr. Heinemann reviewed a set of notes that featured a repeated mental status examination rather than the set of notes that featured the re-evaluation of the Plaintiff's mental status at each examination, the latter of which were in the records submitted after the hearing that Dr. Heinemann did not have the chance to review. *Id* ("These actual therapy notes [containing re-evaluations] are not documented in the evidence reviewed by the medical expert and [are] one of the two exhibits submitted after the hearing, which the medical expert did not have the opportunity to review...and [which] show steady improvement…"). In juxtaposing Dr. Heinemann's opinion on break requirements with the 12F records he did not have the opportunity to review and which showed "steady improvement," the ALJ appropriately considered the supportability and consistency of Dr. Heinemann's opinion. *See e.g.* R. 767 (Plaintiff reporting that she is "fine where I am at right now" and that the "[r]estarted [medication]… really helped improve her mood and reduce any type of OCD or compulsive symptoms"), R. 769 (Plaintiff reporting that "[i]t just seems like it is getting better and better."); R. 773-4 (Plaintiff reporting that her current well-being is a "10/10" and that she is doing well on her medications), R. 757 (Plaintiff reporting feeling at an "8/10" for functioning and satisfaction, an improvement from an earlier "5/10" rating); *see also Bakke v. Kijakazi*, 62 F.4th 1061, 1067 (7th Cir. 2023) (affirming that the ALJ "[p]roperly articulated why the… physicians' opinions were consistent with other record evidence" where the ALJ compared the opinions to the medical records.). The ALJ thus minimally articulated her reasoning as to why the portion of Dr. Heinemann's opinion about Plaintiff's need for rest breaks was unpersuasive while finding the rest of the opinion somewhat persuasive.

### B. ALJ's Omission of Off-Task Time Discussion

Plaintiff argues that the ALJ erred in failing to discuss off-task time in the RFC analysis. [17], p. 10-12. During the hearing, the ALJ asked the VE what the threshold was for "[w]ork-place tolerance for off-task behavior," to which the VE responded that "[a]n individual could be off-task up to 15 percent of the work day [*sic*] and maintain competitive work." R. 60. The ALJ did not ask the VE any further questions about off-task time and did not ask any hypotheticals which included off-task limitations specific to Plaintiff. Plaintiff argues that, because the ALJ asked the VE about a workplace's general tolerance for off-task behavior, the ALJ was "[r]equired to, at a minimum, discuss the VE testimony concerning off-task time in the RFC analysis and explain why… [Plaintiff] would not be off-task 15 percent of the workday." [17], p. 11-12.

The ALJ did not err in failing to discuss off-task time in the RFC analysis. An ALJ is not required to discuss a limitation "where no medical opinion in the record supported it," and Plaintiff points to no medical opinion in the record that articulated an off-task limitation. *Edward H. v. Kijakazi*, No. 20-CV-3847, 2023 WL 2683171, at *9–10 (N.D. Ill. Mar. 29, 2023); *Spring W. v. Saul*, No. 20 C 1864, 2021 WL 2529615, at *6 n.5 (N.D. Ill. June 21, 2021) ("[N]o doctor opined that [Plaintiff] would require an off-task time limitation, so [Plaintiff's] argument that the ALJ should have included an off-task time limitation, lacks merit"); *Victoria R. v. Kijakazi*, No. 20-CV-04444, 2022 WL 3543231, at *12 (N.D. Ill. Aug. 18, 2022) (rejecting Plaintiff's contention that the ALJ erred in failing to discuss an off-task limitation because "the Court finds no medical opinion evidence in the record to support such a limitation."); *Laura B. v. Kijakazi*, No. 20-CV-

6

03403, 2023 WL 2306938, at *11–12 (N.D. Ill. Mar. 1, 2023) (rejecting Plaintiff's argument about the ALJ's failure to include an off-task discussion in the RFC because "[a]lthough Claimant argues that the combination of her fatigue, anxiety, depression, and headaches would cause her to be off task beyond the competitive threshold, she again cites no medical opinion in the record to support such a limitation.") (internal citations omitted). Moreover, Plaintiff does not explain how the symptoms she cites would result in corresponding off-task limitations, and instead argues that the ALJ should have explained such. [17], p. 11-12; [25], p. 10. Yet, "[i]t was [Plaintiff's] burden to establish not just the existence of the conditions, but to provide evidence that they support specific limitations affecting her capacity to work." *Weaver v. Berryhill*, 746 F. App'x 574, 579 (7th Cir. 2018). As such, where "[n]o medical evidence called for a… limitation.. the ALJ was not required to intuit such a limitation from the administrative record." *Reynolds v. Kijakazi*, 25 F.4th 470, 471 (7th Cir. 2022).

Further, "[t]he ALJ was not required to discuss every response the VE gave to hypotheticals the ALJ ultimately discarded," so the mere act of the ALJ inquiring as to general off-task tolerance did not inherently require a discussion in the RFC. *Laura B.*, No. 20-CV-03403, 2023 WL 2306938, at *11–12 (quoting *Clemente A. v. Saul*, No. 18-cv-6345, 2019 WL 3973117, at *5 (N.D. Ill. Aug. 22, 2019)); *Victoria R.*, No. 20-CV-04444, 2022 WL 3543231, at *12 (rejecting the argument that the ALJ was required to discuss an off-task limitation because the ALJ solicited testimony from the VE about it); *Edward H.*, No. 20-CV-3847, 2023 WL 2683171, at *9–10 (rejecting Plaintiff's contention that the ALJ was required to address an off-task limitation in the RFC because the ALJ asked the VE about off-task tolerance). Ultimately, "[e]ven if the record could support such [off-task] limitations, there is nothing that compels them," and the ALJ did not err in failing to discuss an off-task limitation in the RFC. *Delong v. Saul*, 844 F. App'x 894, 900 (7th Cir. 2021).

### C. ALJ's Subjective Credibility Finding

Plaintiff contests the ALJ's credibility finding, arguing that the ALJ "[d]id not evaluate Plaintiff's allegations in accordance with SSR 16-3P." [17], p. 12. Under SSR 16-3P, in evaluating the intensity, persistence, and limiting effects of a Plaintiff's symptoms, an ALJ is instructed to consider various factors, including a Plaintiff's daily activities and medication use, an evaluation often described as the "credibility finding." SSR 16-3P (Mar. 28, 2016) ; *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). An ALJ's credibility finding is given "special deference" and will be overturned only if it is "patently wrong," meaning that it "lacks any explanation or support." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (quoting *Eichstadt v. Astrue*, 534 F.3d 663, 667–68 (7th Cir. 2008)) (internal quotations omitted); *Elder*, 529 F.3d at 414. The ALJ's credibility determination here was explained and supported, and thus was not patently wrong.

The ALJ considered testimony regarding Plaintiff's daily activities and "good and bad days," as well as the medical evidence of record, in determining that "the [Plaintiff's] statements about the intensity, persistence, and limiting effects of [her] symptoms… are inconsistent because the records show that, in contrast to her testimony, the claimant's symptoms have been mostly moderate or moderate to severe." R. 84. After analyzing the Plaintiff's medical records, the ALJ found that the records "[s]how a pattern of steady improvement on medications." R. 84; R. 78-84 (citing records such as R. 773-74 (Plaintiff reporting that her well-being is a "10/10" and that she

7

is doing well on her medications), R. 771 (Plaintiff reporting that she "feels that her mood is good and that her psychiatric medications continue to remain effective… in addition to her mood she feels that her OCD symptoms are under control at this point in time"), R. 769 (Plaintiff reporting "doing well on current medications… miniscule racing thoughts… it just seems like it is getting better and better"), R. 767 (Plaintiff reporting that the "[medication] that was restarted at her last visit really helped improve her mood and reduce any type of OCD or compulsive symptoms" and that her "psych meds are working" with her anxiety much reduced as well), R. 755 (Plaintiff reporting that her "racing thoughts have slowed down considerably" since restarting her medication), R. 529 (Plaintiff requesting to restart medication because she thought it helped her thoughts and mood, and reporting that she "has been not too good since her last visit… [as she] hasn't had no meds [*sic*] for like two months now"). Moreover, the ALJ found the Plaintiff's purported limitations inconsistent with the records because the addition of therapy, a hysterectomy, and marijuana usage resulted in "very good control of her symptoms." R. 84; R. 78-84 (citing records such as R. 765 (reporting that since her hysterectomy, Plaintiff is "feeling good"), R. 529 (Plaintiff reporting that counseling is "going well for her"), R. 769 (Plaintiff reporting she is "self-medicating" with marijuana use in addition to her psychiatric medications, and that her "mood is good" and that she is doing well on her current medications).

Plaintiff specifically challenges the ALJ's consideration of her daily activities, arguing that the ALJ "[d]id not explain how any specific alleged activity of daily living was inconsistent with any specific alleged limitation or medical evidence." [17], p. 12. The ALJ was not required to discuss the inconsistencies between Plaintiff's daily living activities and the medical record with this level of particularity. The ALJ need only generally "[e]xplain perceived inconsistencies between a claimant's activities and the medical evidence." *Pepper v. Colvin*, 712 F.3d 351, 368 (7th Cir. 2013) (quoting *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011) (internal quotations omitted)); *see Bartucci v. Astrue*, No. 12-CV-2617, 2012 WL 6216747, at *6 (N.D. Ill. Dec. 13, 2012) (affirming the ALJ's credibility determination where "the ALJ acknowledged [Plaintiff's] testimony and allegations regarding his pain and fatigue but, after an objective review of the medical evidence, did not find his pain and fatigue to be disabling."). The ALJ clearly articulated her perceived inconsistencies here. After reviewing Plaintiff's daily living activities and her allegations as to the severity of her symptoms, the ALJ proceeded to review Plaintiff's medical records, including the numerous records in which Plaintiff reported moderate symptomology that was improved by medication. R. 79-84. The ALJ then explained that those records, discussed above, demonstrated that "in contrast to [Plaintiff's] testimony" on her daily living activities and the severity of her symptoms, her symptomology was mostly moderate and improved by medication. R. 84. As a result, "[i]t was well within the ALJ's authority to disregard [Plaintiff's] testimony because it conflicted with what she told [physicians]" about her symptoms, as documented by her medical records. *Elder*, 529 F.3d at 414.

Plaintiff also challenges the ALJ's evaluation of Plaintiff's good and bad days, arguing that the ALJ "failed to discuss portions of the mental status examination that supported a finding of disability." [17], p. 13. The ALJ did, in fact, discuss those portions of Plaintiff's mental status examinations that reported Plaintiff's ongoing symptomology. *See, e.g.,* R. 84 ("[C]laimant continued to report things were getting better and better…though [she] admitted to being manic but still asserted she was doing well on her medications with only miniscule racing thoughts… social worker indicated [she] presented with elated affect, high energy, and stable mood… her

8

speech was pressured, loud, and tangential/circumstantial") (citing R. 769-770) (internal quotations omitted). The ALJ simply concluded that, despite such reports of ongoing symptomology, Plaintiff's contemporaneous reports of improvement and stability with medication were ultimately more demonstrative of Plaintiff's overall mental status. The Court "will not reweigh the evidence, resolve debatable evidentiary conflicts… or substitute our judgment for the ALJ's determination" that the improvement reported in Plaintiff's treatment notes was most representative of Plaintiff's capacity despite the ongoing symptomology also recorded in the notes. *Reynolds*, 25 F.4th at 473.

Further, Plaintiff presents limited challenges to the ALJ's evaluation of her medication and lack of inpatient hospitalization. [17], p. 14-15; [25], p. 14-15. Plaintiff's argument as to the ALJ's consideration of her medication is underdeveloped. Plaintiff asserts that the ALJ erred in finding her medication effective because Plaintiff also reported ongoing symptomology while using her medication, but Plaintiff does not explain why her ongoing symptomology renders her contemporaneous and often energetic reports as to her medication's effectiveness void. [17], p. 14-15; [25], p. 15. Instead, Plaintiff simply lists the symptoms evinced in the record. *Id*. Plaintiff's "argument is perfunctory and undeveloped, and therefore waived." *Hall v. Berryhill*, 906 F.3d 640, 644 (7th Cir. 2018) (quoting *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016)) (internal quotations omitted).

As to Plaintiff's challenge regarding the ALJ's statement that she found medications effective for Plaintiff in part because, even during "dips and more symptomatic periods," those periods "[h]ave not resulted in the claimant needing hospitalizations," it is true that "a lack of inpatient treatment does not necessarily indicate that a claimant is therefore capable of gainful employment." R. 84; *Martinez v. Kijakazi*, 71 F.4th 1076, 1083 (7th Cir. 2023) (quoting *Voigt v. Colvin*, 781 F.3d 871, 876 (7th Cir. 2015)) (internal quotations omitted). But an ALJ may nevertheless properly consider the lack of inpatient hospitalization in conjunction with other factors when evaluating a Plaintiff's credibility. *See Elizabeth A. D.*, No. 19 C 6024, 2021 WL 148831, at *13 (affirming a denial of benefits where the ALJ considered a lack of psychiatric hospitalization in addition to other factors); *Reggie N. v. Kijakazi*, No. 21 CV 63, 2023 WL 5277877, at *2 (N.D. Ill. Aug. 16, 2023) (rejecting a challenge to the ALJ's decision based on their consideration of a lack of hospitalization because the ALJ "appropriately considered [Plaintiff's] lack of hospitalization along with other aspects of his treatment"). The ALJ here considered the Plaintiff's lack of hospitalization in addition to numerous other factors, including Plaintiff's medical records which indicated improvement with medication and overall moderate symptomology. R. 79-84. Accordingly, the ALJ appropriately considered the import of Plaintiff's lack of psychiatric hospitalization because, "[w]hile the ALJ considered [Plaintiff's] lack of hospitalization, her decision was not based solely on this fact." *Reggie N.*, No. 21 CV 63, 2023 WL 5277877, at *2.

Ultimately, the ALJ's credibility determination is not patently wrong because the ALJ explained and supported her reasoning with evidence of Plaintiff's moderate symptomology, improvement with medications, and overall "very good control of her symptoms" with the addition of a hysterectomy and self-medication via marijuana use. R. 84.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment [17] is denied and the Commissioner's motion for summary judgment [24], is granted. The final decision of the Commissioner denying benefits is affirmed.

Date: 03/08/2024  ENTER:

_Margaret J. Schneider_
United States Magistrate Judge